<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MARK LOPEZ, | : | |
| Plaintiff, | : | Civil Action No. 04-3307 |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

<u>**Chesler, District Judge**</u>

  This matter comes before the Court on the appeal by plaintiff Mark Lopez ("Lopez") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he is not eligible for Social Security disability benefits under the Social Security Act. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), and for the reasons that follow, the Court finds that the ALJ's decisions was supported by substantial evidence and is hereby **AFFIRMED,** and plaintiff's appeal is **DENIED**.

**I. FACTS**

 **A. Background**

  Plaintiff, Mark Lopez, born on April 1, 1955, is a college graduate who was enrolled for a partial year at Temple Medical School. He brings this action as an appeal of an administrative law judge's decision denying him benefits under the Social Security Act ("SSA"). According to the record, plaintiff worked from June 1980 through August 1986 as a quality control technician

in a laboratory. (Tr. 145.)[1] He worked from May 1987 through August 1987 and from May 1993 through August 1993 as a lab assistant; from November 1996 through December 1996 as a substitute teacher; in October 2000 as a technician; and for one day in March of 2001 as an Environmental Specialist Trainee. (Id.)

Plaintiff applied for Social Security benefits on February 11, 2001. (Tr. 114.) In his application, plaintiff described his limiting condition as degenerative disk disease and arthritis in his spine and left ankle. (Tr. 114.) Plaintiff claimed he was in constant pain and his condition prevented him from sitting, standing, or walking for any length of time. (Tr. 114.) Plaintiff stated this condition prevented him from working a full or part-time job because of his inability to sit or stand for any length of time, or to lift over 10-15 pounds. (Tr. 114, 122.) He stated his condition first bothered him in November of 1987 and first prevented him from working on June 30, 1992, when he stopped working altogether. (Id.)

### B. Plaintiff's Medical History Through June 30, 1992

Given that June 30, 1992 is the last date on which plaintiff was eligible for disability benefits, the Court will focus on evidence of disability up to that time.

The record shows that plaintiff saw his treating physician, Dr. Eugene Ryfinski, for the onset of severe low back pain with radiation down the right lower extremity on October 23, 1987. (Tr. 399.) On November 13, 1987, plaintiff treated with Dr. Francis J. Pizzi of the Neuro-Group, P.A., complaining that he suffered severe lower back pain and numbness in his right leg for the past six weeks and that he was unable to get out of bed due to the severity. (Tr. 399, 219.)

---

[1] "(Tr. ____.)" shall refer to pages within the administrative record, which has been submitted to the Court.

Dr. Pizzi noted that plaintiff's back pain commenced after a "bout of bronchitis with coughing and sneezing." (Tr. 219.) Dr. Pizzi noted that plaintiff was markedly obese, had limited range of motion of his lumbar spine, straight leg raising caused pain in the low back at 45 degrees, and he had weakness in his right foot. (Tr. 219.) He diagnosed plaintiff with L5-S1 disc herniation on the right and recommended "surgery for this due to his size and ongoing symptoms and nerve damage." (Tr. 219.)

Plaintiff was unable to undergo a CT scan due to his size and, thus, was evaluated by an alternative procedure – a lumbar myelogram.[2] (Tr. 389.) The lumbar myelogram was performed on December 4, 1987 and its results showed a "[s]light effacement and compression of the right L5 nerve root," which may have "represent[ed] a small lateral disc protrusion at L4-5 on the right." (Tr. 389.) Due to complications with the procedure, plaintiff was admitted to St. Francis Medical Center on December 4, 1987 and discharged on December 8, 1987. (Tr. 395.)

In a December 11, 1987 letter to Trenton State College, Dr. Ryfinski advised of plaintiff's condition, that he had recommended bed rest for several weeks, and that plaintiff "may, in fact, need to miss the entire spring semester of 1988 because of this underlying condition." (Tr. 396-397.) Specifically, he noted plaintiff's sudden development of lower back pain with radiation of pain down his right leg, which started on October 23, 1987. (Tr. 396.) The letter recounted the necessity for, and complications with, the myelogram and plaintiff's resulting hospitalization. (Tr. 396.) It stated that plaintiff was started on injections of steroids and pain medications, but that there was no clear etiology for his severe lower back pain. (Tr. 396.)

---

[2] A myelogram, or myelography, is a procedure in which "contrast fluid," a dye containing iodine, is injected into the subarachnoid space and X-Ray pictures are taken as the contrast material moves to different areas. Dorland's Illus. Med. Dictionary 1210 (30th ed. 2003).

Medical records show a follow-up with Dr. Ryfinski on January 11, 1988 for back pain. (Tr. 395.) Plaintiff next treated with Dr. Richard A. Davis on or before February 23, 1988. (Tr. 223-24.) Dr. Davis described plaintiff as having developed low back pain with radiation into his right leg and "he had great difficulty walking or bearing weight and even sitting on his right buttocks." (Tr. 223.) He stated, however, that plaintiff had no history of injury and that his pain was far less and that his paresthesias in the form of numbness and tingling had disappeared. (Tr. 223.) Plaintiff weighed 345 pounds at that time. (Tr. 223.) Dr. Davis noted that plaintiff had no posterior cervical pain, no pain radiating from neck into shoulders, arms or hands, and had good hand grips. (Tr. 223.) Plaintiff used a cane and had some weakness of dorsiflexion of the right foot and thigh. (Tr. 223.) Dr. Davis diagnosed plaintiff with a herniated nucleus pulposus L5-S1, right. (Tr. 224.)

Plaintiff saw Dr. Ryfinski again on July 6, 1988, complaining of, among other things, pain in the left side of his lower back. (Tr. 394.) Plaintiff weighed 329 pounds at that time. (Tr. 394.) He followed up again on July 28, 1988 for reevaluation for physical therapy. (Tr. 393.) He weighed 320 pounds at that time. (Tr. 393.)

Plaintiff began treatment with Dr. Robert A. Carabelli at St. Lawrence Rehabilitation Center on or about August 12, 1988. (Tr. 217.) Dr. Carabelli noted that plaintiff was overweight but well developed and his back and spine were without spasm or trigger points. (Tr. 218.) Plaintiff had some tenderness but straight leg raising was negative for pain and his range of motion was within normal limits. (Tr. 218.) Dr. Carabelli concluded that plaintiff had low back pain secondary to his L5 radiculitis and he was progressing along in his program, although he lacked some confidence. (Tr. 218.) He stated that if plaintiff continued in his weight loss

program, he could avoid surgery.  (Tr. 218.)

The record shows plaintiff's back improved over the next several months.  Plaintiff attended physical therapy at St. Lawrence Rehabilitation Center two to three times weekly from August 1988 through April 1989.  On September 16, 1988, Dr. Carabelli noted that plaintiff felt much better with his current therapy program and had begun "the Back School."  (Tr. 212.)  Plaintiff followed up with Dr. Ryfinski on September 27, 1988 and the treatment notes reflect that his back felt better.  (Tr. 393.)  He weighed 319 pounds at the time.  (Tr. 393.)  On October 12, 1988, Dr. Carabelli reported that plaintiff continued to make progress in his exercise programs, had begun the Back School, and had no new complaints.  (Tr. 209.)  On November 4, 1988, Dr. Carabelli noted that plaintiff had some increased low back pain radiating down his right leg in the prior week.  (Tr. 206.)  He noted that patient continued to improve despite this setback.  (Tr. 206.)

On December 6, 1988, however, plaintiff saw Dr. Ryfinski, complaining of increased back pain and strict bed rest was recommended.  (Tr. 393.)  Plaintiff then saw Dr. Carabelli on December 13, 1988, complaining of an increase in back pain (Tr. 202) and, for this reason, was unable to attend physical therapy that week (Tr. 204.)  During a December 21, 1988 follow-up, Dr. Carabelli performed an EMG and concluded that plaintiff suffered from right L5 nerve root irritation.  (Tr. 199-200.)  On January 18, 1999, Dr. Carabelli assessed plaintiff has feeling much better and no longer requiring medications.  (Tr. 198.)  He described plaintiff as overweight but well developed.  (Tr. 198.)

Dr. Carabelli assessed plaintiff on February 22, 1989 as feeling better with less pain and having increased biking exercise and lost weight.  (Tr. 197.)  On April 12, 1989, he assessed

5

plaintiff as having continued to improve, with no radiation of pain. (Tr. 192.) He stated "[g]reat improvement made over this time" and discharged plaintiff with a home program and reevaluation in six weeks, after which he was to join the Mercer County Swim & Gym Program. (Tr. 192.)

The next treatment notes in the record reflect a January 5, 1990 visit to Dr. Ryfinski, complaining of severe back pain. (Tr. 392.) Plaintiff weighed 290 pounds at that time. (Tr. 392.) Plaintiff's records indicate that his Vicodin prescription for back pain was refilled on September 27, 1990 and February 14, 1991. (Tr. 390.)

Dr. Ryfinski visited plaintiff at his home on February 15, 1991 and noted he was doing well, losing weight, had less pain in his back, was attending class, and swimming three to four times per week. (Tr. 390.) When he had back pain, Dr. Ryfinski noted, Vicodin helped. (Tr. 390.) Dr. Ryfinski saw plaintiff again at his home on September 10, 1991 and noted he was going back to school, had "occasional back pains" for which he took Vicodin and Motrin, and that he was losing weight. (Tr. 390.) The record shows a refill of his Vicodin prescription on that day. (Tr. 390.) Plaintiff treated with Dr. Ryfinski on February 7, 1992 and March 18, 1993 for bronchitis and the treatment notes make no mention of back or ankle pain. (Tr. 389.) He treated on May 5, 1993 for allergy symptoms (Tr. 388) and on November 10, 1993 for cold symptoms (Tr. 387).

The next indication in the medical records of back problems was not until July 5, 1994, when plaintiff treated with Dr. Ryfinski for back pain in connection with cold symptoms and coughing. (Tr. 387.) Plaintiff weighed 315 ½ pounds on that date. (Tr. 387.) Plaintiff visited Dr. Ryfinski again on August 10, 1994 with no mention of back pain. (Tr. 386.) He visited Dr.

Ryfinski on September 14, 1994, complaining of back pain that had increased after an MRI. (Tr. 386.)

The record contains two pieces of correspondence that bear on plaintiff's condition on or before June 30, 1992. The first is an October 5, 1994 letter from Dr. Ryfinski to plaintiff's apartment complex explaining his injury and his inability to attend medical school at that time. (Tr. 385.) Dr. Ryfinski wrote:

> I have known Mr. Lopez for the past ten years. He has had back problems since 1987 and has been known to have degenerative disc disease with exacerbation of severe back pain. He has had evidence of recent MRI scan showing right lateral herniated disc and disc bulging. He was advised to stay off of his feet and was further advised to leave medical school and taken an [sic] leave of absence. His treatment options, at this point, include conservative care with rest and rehabilitation with physical therapy, medication, weight reduction as well as the distinct possibility of surgical intervention.

(Tr. 385.) The second is a January 20, 2004 letter from Dr. Ryfinski to plaintiff's counsel regarding plaintiff's condition. (Tr. 404-05.) After recounting his medical history, Dr. Ryfinski concluded as follows:

> Mr. Lopez's treatment, which has been directed by multiple specialists as well as myself, has included the prescription of medications in the following classes: non-steroidal inti-inflammatory, Cox-2 Inhibitors, narcotic pain medication, and muscle relaxers. His medication regimen has been supplemented with physical therapy and regular office visits with specialists as well as myself. Mr. Lopez has been compliant with the treatment plan as outlined by his specialists and myself. He has successfully lost a significant amount of weight such that medications that were initially prescribed to control his hypertension and asthma are no longer needed. Unfortunately, despite Mr. Lopez's adherence to his treatment plan, he continued to have chronic and severe back pain, which interfered with his daily activities. This pain has had a most significant impact on his life, including forcing him to

      withdraw from medical school.

(Tr. 405.) This letter does not describe the dates on which plaintiff experienced such limitations or whether or not he improved at any point.

    **B.**    **Procedural History**

On February 12, 2001, Mr. Lopez filed an application for Disability Insurance Benefits under the Social Security Act. (Tr. 134-36.) Plaintiff claimed he was unable to work since June 30, 1992 due to degenerative disc disease and arthritis in his spine and left ankle. (Tr. 114.) Plaintiff then timely filed a Request for Hearing on September 25, 2001. (Tr. 50.) Administrative Law Judge ("ALJ") Mark G. Barrett held a hearing on April 22, 2003 in Voorhees, New Jersey, (Tr. 441-472), and issued a decision on May 13, 2003 finding plaintiff not to have been disabled during the period for which he was entitled to Social Security benefits (Tr. 28-37).

By letter dated July 5, 2003, plaintiff's attorney requested that the Appeals Council vacate the May 13, 2003 decision and remand the case for further proceedings before the ALJ. (Tr. 62-63.) Plaintiff argued the ALJ did not adequately consider his treatment at St. Lawrence Rehabilitation Center in 1988 and 1989, and failed to acknowledge or evaluate plaintiff's severe obesity during the time before his date of last insured. (Tr. 62.) By Order dated September 16, 2003, the Appeals Council vacated the May 13, 2003 decision and remanded the case to the ALJ because (1) the ALJ failed to consider medical evidence from St. Lawrence Rehabilitation Center from August 12, 1988 through April 13, 1989, and progress notes from Dr. Ryfinski dated October 27, 1987 through February 14, 2003; (2) the ALJ did not sufficiently consider plaintiff's obesity; and (3) the ALJ did not articulate sufficient rationale for its finding that plaintiff had

8

residual functional capacity for work-related functions that equate to a maximum sustained capability for sedentary work. (Tr. 38-40.) Thus, the Appeals Counsel granted plaintiff's Request for Review.

A new hearing was held on January 14, 2004. (Tr. 406-440.) ALJ Barrett issued a new decision, dated March 16, 2004, again finding that plaintiff was not disabled on or before June 30, 1992 because he retained the ability to perform sedentary work activity. (Tr. 13-24.) The March 16, 2004 decision became the final decision when the Appeals Council denied plaintiff's Request for Review. (Tr. 7-9.) Plaintiff timely filed this action seeking reversal of the March 16, 2004 decision and remand for further proceedings.

### C. The March 16, 2004 Decision

In the March 16, 2004 decision, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 17.) First, the ALJ found that plaintiff did not perform substantial gainful work after the onset of his alleged disability. (Tr. 18.) Second, the ALJ determined that plaintiff's "herniated disc disease and morbid obesity" imposed significant work-related limitations and that he "ha[d] a severe impairment within the meaning of the Act." (Tr. 18.) Third, the ALJ found that plaintiff was unable to perform any of his past relevant work. (Tr. 24.) Fourth, the ALJ found that, while "severe," plaintiff's impairments did not rise to the level of severity to meet any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18.) The ALJ noted that although plaintiff complained of the onset of low back pain in November of 1987, he had reported significant improvement throughout 1988 and 1989; namely, he was suffering less pain, he had returned to school on a regular basis, he had a full range of motion in the lumbar spine, was losing weight, and was swimming three to four times per week.

9

(Tr. 21.) For these reasons, the ALJ did not find plaintiff's allegations regarding his limitations totally credible. (Tr. 23.)

      As to the plaintiff's obesity, the ALJ stated as follows:

> other than his intermittent episodes of low back pain, his health was otherwise good. He had full range of motion of the cervical spine, and in the upper and lower extremities; and eventually by April 1989, he had full range of motion of the lumbar spine. He had good grip strength and good muscle strength in his upper and lower extremities. He was able to swim for exercise several times a week (Exhibit 4F & 25F).

(Tr. 21-22.) Accordingly, the ALJ found that while plaintiff experienced intermittent pain, he was not disabled at any time from November 1987 through June 30, 1992. (Tr. 22.)

      The ALJ assigned "little weight" to Dr. Ryfinsky's January 20, 2004 letter because "his own treatment notes for the time period from October 1987 through February 1992 fail to corroborate the findings from his report." (Tr. 20.) The ALJ concluded that plaintiff had the exertional capacity to perform substantially all of the requirements of sedentary work. (Tr. 23.) Having found the plaintiff not disabled, the ALJ denied his application for benefits. Plaintiff now appeals the March 16, 2004 decision.

## II. DISCUSSION

###     A.    Standard of Review

      In reviewing an ALJ's denial of Social Security disability benefits, a district court must determine whether or not the decision was supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). "It means such relevant evidence as a

reasonable mind might accept as adequate." Id. If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The Third Circuit has made it clear "that determination of the existence vel non of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original). In reaching a conclusion that a claimant is capable of performing work, the ALJ must analyze all the evidence and explain the weight the ALJ has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Access to the ALJ's reasoning is essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, a District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

  **B.**  **Standard for Awarding Benefits Under the Act**

An individual may not receive disability insurance benefits under the Act unless he or she first meets statutory insured status requirements. See 42 U.S.C. § 423, Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). To be considered disabled, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Thus, a claimant is not disabled unless "his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual's subjective complaints are not enough to establish a disability. Furthermore, the claimant bears the burden of proving the existence of the alleged disability. 42 U.S.C. § 423(d)(5)(A).

In reviewing a claim for disability insurance benefits, the ALJ must undertake a five-step evaluation process. See 20 C.F.R. § 404.1520, Bowen v. Yuckert, 482 U.S. 137, 140 (1987). First, the ALJ must determine whether or not the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a). If the claimant is engaged in substantial gainful activity, the application must be denied. See 20 C.F.R. § 404.1520(b). If the claimant is not employed, the ALJ proceeds to step two and determines whether or not the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(c). A claimant who does not have a "severe impairment" is not disabled. Id. Third, if the impairment is found to be severe, the ALJ determines whether or not the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing"). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. See 20 C.F.R. § 404.1520(d).

If, however, claimant's impairment is found not to meet or equal a listed impairment under the Listing, as was the case here, the ALJ proceeds to step four, which requires a

determination of whether or not the limits imposed by claimant's impairment (i.e., the "Residual Functional Capacity" or "RFC") prevent the claimant from returning to the work claimant performed in the past ("Past Relevant Work" or "PRW").  See 20 C.F.R. § 404.1520 (e).  If the claimant is found capable of performing his PRW, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his PRW, the evaluation must continue to the last step.

The fifth and final step in the evaluative process requires a determination of whether the claimant, with their RFC, is capable of performing some other work available in the national economy.  In this last step, the burden shifts to the Commissioner to show that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity."  Plummer, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)).  Benefits are denied if work exists in the national economy in which the claimant could engage given the above-listed factors.

      C.     **Plaintiff's Appeal**

In this appeal, plaintiff makes two arguments.  First, he argues the ALJ erred by failing to properly evaluate Dr. Ryfinski's medical opinion and, in effect, substituted his own medical judgement for that of a qualified physician.  Second, he argues the ALJ erred by failing to consider how his obesity affected his ability to work.  For the reasons that follow, the Court affirms the ALJ's determination.

        i.     **The ALJ's Consideration of Medical Evidence**

Plaintiff argues that the ALJ substituted his own medical judgment for that of plaintiff's treating physician.  (Pl. Br. at 4-7.)  Specifically, plaintiff argues the January 20, 2004 report of

Dr. Ryfinski states that he evaluated plaintiff every two to three months between October 1987 and June 30, 1992 and that plaintiff's back pain persisted and continued to worsen, impairing his ability to function on a daily basis.  (Id. at 4-6.)  Plaintiff challenges the ALJ's decision to assign the Ryfinski report "little weight" because he "fails to cite a single inconsistent note in the doctor's treatment records which presumably would fail to corroborate the doctor's conclusions."  (Id. at 6.)  Plaintiff argues that if the basis of Dr. Reyfinski's report was unclear, the ALJ should have recontact Dr. Ryfinski to obtain clarification, rather than reject the report and replace it with his own judgment.  (Id. at 7.)

In its opposition, the Commissioner argues the ALJ properly discounted the weight of the Ryfinski report because it was a retrospective opinion, given 11 years after plaintiff's date last insured, which found no support in contemporaneous treatment notes.  (Def.'s Br. at 11-12.)  Rather than showing treatment for increased pain, the Commissioner argues, the medical records show improvement and that plaintiff resumed physical activity with a full range of motion in his back.  (Id. at 12.)  Moreover, the Commissioner argues the ALJ was not obligated to recontact Dr. Ryfinski because it was clear, based on the affirmative statements within the treatment notes, that plaintiff was not disabled.  (Id. at 12-13.)

Courts must give a treating physician's opinion controlling weight when it is "well-supported" by accepted medical techniques and consistent with "other substantial evidence on the record."  28 C.F.R. § 416.927(d)(2).  In considering whether or not to accept a treating physician's findings, an ALJ must "consider the medical findings that support a treating physician's opinion that the claimant is disabled."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)); see also Jones v. Sullivan, 954

14

F.2d 125, 129 (3d Cir. 1991) (holding while an ALJ in a social security disability case must accept the medical judgment of a treating physician in the absence of contradictory medical evidence, it may reject the treating physician's judgment where his opinions are conclusory and unsupported by medical evidence). An ALJ may only "reject 'a treating physician's opinion outright on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation, or lay opinion." Morales, 225 F.3d at 317.  Nonetheless, an ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because such determinations are reserved for the Commissioner.  20 C.F.R. § 416.927(e); S.S.R. 96-5p, 61; see also Beltran v. Barnhart, No. CIV.A.01-4062, 2002 WL 32342482, at *4 (E.D. Pa. Nov. 15, 2002) ("A treating physician's opinion that a patient is disabled, or unable to work . . . is entitled to little or no weight because such determinations are reserved for the Commissioner and not the health care provider.").

    The Court agrees that Dr. Ryfinski's report, when taken with his treatment notes, does not support a finding of disability on or before June 30, 1992.  Dr. Ryfinski's treatment notes show that plaintiff complained that his back pain had gotten worse on January 5, 1990.  (Tr. 392.)  The next record indicates that Dr. Ryfinski renewed plaintiff's Vicodin prescription for back pain on September 27, 1990 and February 14, 1991.  (Tr. 390.)  On February 15, 1991, Dr. Ryfinski visited plaintiff at his home and noted he was doing well, losing weight, had less pain in his back, was attending class, and swimming three to four times per week.  (Tr. 390.)  When he had back pain, Dr. Ryfinski noted, Vicodin helped.  (Tr. 390.)  Dr. Ryfinski saw plaintiff again on September 10, 1991 and noted he was going back to school, had "occasional back pains" for which he took Vicodin and Motrin and that he was losing weight.  (Tr. 390.)  The records show a

refill of his Vicodin prescription on that day. (Tr. 390.) The next treatment notes, dated February 7, 1992 and March 18, 1993, make no mention of back or ankle complaints. (Tr. 389.) Plaintiff treated with Dr. Ryfinski on May 5, 1993 for allergy symptoms (Tr. 388) and on November 10, 1993 for cold symptoms, with no mention of back pain. (Tr. 387.) Indeed, Dr. Ryfinski's notes make no mention of back problems until July 5, 1994, after plaintiff's last date of insured. (Tr. 387.) Incidentally, plaintiff visited Dr. Ryfinski again on August 10, 1994 with no mention of back pain. (Tr. 386.) The apparent gap in treatment between the "occasional back pain" plaintiff experienced in September 1991 and his date of last insured of June 30, 1992 is inconsistent with Dr. Ryfinski's blanket characterization of plaintiff's injuries as "chronic and severe back pain" in his January 20, 2004 letter.

     Moreover, Dr. Ryfinski's report does not identify a particular time during which plaintiff suffered such pain and when it interfered with his daily activities. Indeed, while his letter mentions that plaintiff's pain forced him to withdraw from medical school, that was not until December 1995, well after the last date on which he was eligible for disability insurance. In this regard, the report is unhelpful in determining whether or not plaintiff was disabled on or before his date of last insured.

     The report further states that Dr. Ryfinski evaluated plaintiff once every two to three months and discussed plaintiff's back pain. His treatment notes appear to be detailed and to record each time plaintiff complained of back pain or other ailment. His notes are silent, however, as to any episodes of disabling back pain during plaintiff's visits from February 1991 through June 30, 1992. Accordingly, the Court agrees with the ALJ that Dr. Ryfinski's conclusions in his report are not corroborated by his treatment notes. At the very least, the

conclusions with respect to the relevant time frame, on or before June 30, 1992, are not supported in the record. Given the lack of support and inconsistent record evidence, the ALJ was justified in according Dr. Ryfinski's opinion little weight. See 20 C.F.R. § 416.927(d)(2). Moreover, to the extent Dr. Ryfinski's report is offered for his opinion that plaintiff is limited such that he cannot do work, such conclusions may be accorded "little or no weight" by the ALJ, since such a determination is one reserved for the Commissioner, and not the health care provider. See, e.g., Beltran, 2002 WL 32342482, at *4. Accordingly, there appears to have been an adequate basis for limiting the weight accorded to the Ryfinski report.

Finally, the Court notes the ALJ did not err by failing to recall Dr. Ryfinski. As discussed above, the ALJ's findings were based on record medical evidence, and he did not lack evidence upon which to base his determination. Moreover, plaintiff has not supplied, or even described to the Court, any material evidence that a recall of Dr. Ryfinski would yield. See L. Civ. R. 9.1(a)(3)(D) (providing that if plaintiff seeks remand "for the purpose of taking additional evidence, such evidence must be attached to the brief and accompanied by a showing that the new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). Remand is therefore unnecessary.

###### ii.     Consideration of Obesity

Plaintiff also argues the ALJ erred by not giving adequate consideration to plaintiff's obesity. The Social Security Administration has stated that although obesity may at times reach the level of a severe impairment, a claimant must establish the existence of obesity, especially that reaching the level of a severe impairment, through evidence from an examining physician. Social Security Ruling 02-1p, 2000 WL 628049, at *4-6 (Sept. 12, 2002). An ALJ must consider

obesity in connection with whether or not (1) an individual has a medically determinable impairment; (2) such impairment is severe; and (3) the impairment meets or equals the requirements of a listed impairment in the listings; and (4) an individual's impairment prevents him form doing past relevant work and other work that exists in significant numbers in the national economy.  Id.

      Here, the medical evidence shows that plaintiff was obese from the November 1987 onset of his back pain through the June 30, 1992 date of last insured.  Dr. Carabelli's treatment notes from August 12, 1988 specifically reference his treatment with Dr. Davis, "who suggested a weight reduction program first prior to surgery" and that plaintiff had lost about 60 pounds from his weight of about 400 pounds.  (Tr. 217.)  The notes further state that plaintiff could avoid surgical intervention by continuing his weight loss program and physical conditioning.  (Tr. 218.)  He stated "[t]he weight reduction will be a big factor."  (Tr. 218.)  The Court further notes an episode in plaintiff's treatment where he was unable to undergo a CT scan because of his size and, therefore, had to undergo an alternative diagnostic procedure.  (Tr. 219.)  While a complication from that procedure caused him to be admitted to the hospital for four days (Tr. 395), plaintiff does not allege this contributed to his ongoing limiting condition.  As discussed above, however, the medical records are silent as to any limiting condition that would prevent plaintiff from working from February 1991 through June 1992.

      Although the ALJ did not go into great detail, he acknowledged plaintiff's obesity in the March 16, 2004 decision.  In finding that it did not support a finding of disability, the ALJ focused on plaintiff's progress through 1989 and that, by that time, plaintiff had full range of motion of the lumbar spine, had good grip strength, good muscle strength in his upper and lower

extremities, and was able to swim and exercise several times per week. (Tr. 22.) These observations were taken from reports of Dr. Davis and Dr. Ryfinski, who acknowledged and considered plaintiff's weight at the time they recorded his condition. Thus, the ALJ's analysis constituted an "indirect consideration" of plaintiff's weight condition in his disability determination. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005). For these reasons, the ALJ found that he was able to perform sedentary work during this time period. (Tr. 22.) The absence of medical evidence of disability caused by spinal injury, obesity, or some combination thereof from February 1991 through June 30, 1992 supports the ALJ's determination. The determination finds further support in the affirmative statements of plaintiff's progress and his attendance at classes during this time period. For these reasons, the Court finds the ALJ's analysis of plaintiff's obesity was sufficient and that his conclusions with regard to obesity were supported by substantial evidence.

### III. CONCLUSION

For all of the foregoing reasons, the Court finds that the ALJ's decisions was supported by substantial evidence and is hereby **AFFIRMED,** and plaintiff's appeal is **DENIED**. An appropriate Order will follow.


Dated: February 22, 2006


                                              /s/ Stanley R. Chesler, U.S.D.J.
                                                  United States District Judge